UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x
:
CAPMARK FINANCIAL GROUP INC.; :
SUMMIT CREST VENTURES, LLC; CAPMARK :
CAPITAL LLC (f/k/a CAPMARK CAPITAL :
INC.); CAPMARK FINANCE LLC (f/k/a :
CAPMARK FINANCE INC.); COMMERCIAL :
EQUITY INVESTMENTS LLC (f/k/a :
COMMERCIAL EQUITY INVESTMENTS, :
INC.); MORTGAGE INVESTMENTS, LLC; NET :
LEASE ACQUISITION LLC; SJM CAP, LLC; :
CAPMARK AFFORDABLE EQUITY :
HOLDINGS LLC (f/k/a CAPMARK :
AFFORDABLE EQUITY HOLDINGS INC.); :
CAPMARK REO HOLDING LLC; and      : Case No. 11-CIV-7511 (RWS)
CAPMARK INVESTMENTS LP, :
:
          Plaintiffs, :
:
    v. :
:
GOLDMAN SACHS CREDIT PARTNERS L.P.; :
GOLDMAN SACHS CANADA CREDIT :
PARTNERS CO.; GOLDMAN SACHS :
MORTGAGE COMPANY; and GOLDMAN :
SACHS LENDING PARTNERS LLC, :
:
          Defendants. :
:
------------------------------------- x

**REPLY MEMORANDUM OF LAW IN SUPPORT OF THE
GOLDMAN LENDERS' MOTION TO TRANSFER THE ACTION TO
<u>THE DISTRICT OF DELAWARE PURSUANT TO 28 U.S.C. § 1412</u>**

Dated:  January 13, 2012

# TABLE OF CONTENTS

P<small>AGE</small>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT .........................................................................................................................3

I. The Claims at Bar Were Extensively Considered in the Delaware Bankruptcy Court ........................................................................................................3

II. Transferring This Action to the District of Delaware Is in the Interest of Justice ...............................................................................................................4

    A. Efficiency and Judicial Economy Are Best Served by Transfer ..................4

    B. Judge Sontchi Is Best Positioned to Determine Preclusion Issues ..............7

    C. Transfer to the District of Delaware Avoids Duplicative Litigation ...........8

    D. Plaintiffs' Choice of Forum Should Not Be Accorded Deference ..............8

    E. Reorganized Capmark's Other Factors Do Not Weigh Against Transfer ........................................................................................................9

III. The Convenience of the Parties Favors Transfer ...................................................10

CONCLUSION ....................................................................................................................10

# TABLE OF AUTHORITIES

CASES

PAGE

Adelphia Recovery Trust v. Bank of Am., N.A., No. 05 Civ. 9050 (LMM), 2009 U.S. Dist. LEXIS 39373 (S.D.N.Y. Mar. 5, 2009) .......................................................... 5

Am. Classic Voyages Co. v. Westaff (USA), Inc. (In re Am. Classic Voyages Co.), 337 B.R. 509 (D. Del. 2006) .............................................................................. 7

Am. Eagle Outfitters, Inc. v. Tala Bros. Corp., 457 F. Supp. 2d 474 (S.D.N.Y. 2006) ......................................................................................................................... 10

Burns v. Grupo Mex. S.A. de C.V., No. 07 Civ. 3496 (WHP), 2007 U.S. Dist. LEXIS 84514 (S.D.N.Y. Nov. 16, 2007) ....................................................................... 9

Dahl v. HEM Pharm. Corp., 867 F. Supp. 194 (S.D.N.Y. 1994) ........................................ 5

Enron Corp. v. Arora (In re Enron Corp.), 317 B.R. 629 (Bankr. S.D.N.Y. 2004) ............ 9

Hart v. Bello, No. 11 Civ. 67 (RMB), 2011 U.S. Dist. LEXIS 45471 (S.D.N.Y. Apr. 27, 2011) ......................................................................................................... 9

In re BearingPoint, Inc., 453 B.R. 486 (Bankr. S.D.N.Y. 2011) ........................................ 2

In re MIG, Inc., No. 09-12118 (KG), 2009 Bankr. LEXIS 4313 (Bankr. D. Del. Dec. 18, 2009) ........................................................................................................ 3

It's a 10, Inc. v. PH Beauty Labs, Inc., 718 F. Supp. 2d 332 (S.D.N.Y. 2010) ................ 10

Norkin v. DLA Piper Rudnick Gray Cary, LLP, No. 05 Civ. 9137 (DLC), 2006 U.S. Dist. LEXIS 14254 (S.D.N.Y. Mar. 31, 2006) ......................................................... 9

Norkus Enters., Inc. v. Getty Oil Co., Civ. A. No. 04-4437 (MLC), 2005 U.S. Dist. LEXIS 29262 (D.N.J. Nov. 17, 2005) .................................................................... 5

Northwest Airlines, Inc. v. City of Los Angeles (In re Nw. Airlines Corp.), 384 B.R. 51 (S.D.N.Y. 2008) ........................................................................................... 5

Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48 (D.D.C. 2000) ........................................ 10

Renaissance Cosmetics, Inc. v. Dev. Specialists Inc., 277 B.R. 5 (S.D.N.Y. 2002) ........ 10

Stern v. Marshall, 131 S. Ct. 2594 (2011) ......................................................................... 6

Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN
    Enters.), 779 F.2d 901 (2d Cir. 1985) .......................................................................... 4

Urban v. Hurley, 261 B.R. 587 (S.D.N.Y. 2001) ................................................................ 9

Walker, Truesdell, Roth & Assocs v. The Blackstone Grp., L.P. (In re Extended
    Stay, Inc.), Nos. 11 Civ. 5394-98, 5864 (SAS), 2011 U.S. Dist. LEXIS
    131349 (S.D.N.Y. Nov. 10, 2011) ........................................................................ 6, 7

STATUTES AND RULES

11 U.S.C. § 547 ................................................................................................................... 6

28 U.S.C. § 1412 ........................................................................................................... 9, 10

**PRELIMINARY STATEMENT**

This case began in Delaware because Capmark chose to file for Chapter 11 there. These very preference claims were considered by the Delaware Bankruptcy Court because Kasowitz sought to prosecute them there.[1] After Judge Sontchi declared he would rule on the merits on the colorability of these claims, however, Kasowitz withdrew them with prejudice. Desperately seeking to avoid the bankruptcy court on these very bankruptcy claims – and even though Judge Sontchi expressly reserved jurisdiction to hear any attempt to bring them again – Kasowitz waited until just after Capmark emerged from bankruptcy to get itself a "new" (in name only) client to try for a do-over in a brand new court. Remarkably, it even drafted the complaint while still counsel to its former client. The suggestion that it is <u>Defendants</u> who are forum shopping takes brazenness to entirely new heights.

As detailed in the Goldman Lenders' Transfer Brief, Judge Christopher Sontchi has dedicated substantial resources over the past two years presiding over the Capmark Bankruptcy and has (i) acquired a thorough understanding of the complex factual history that underlies these preference claims; (ii) reviewed extensive briefing and held a hearing <u>exclusively related to the claims now at issue</u>; (iii) issued lengthy findings of fact that are directly relevant to these claims; (iv) <u>stood ready to rule on the colorability of these claims</u>; (v) suggested that these claims may be precluded by fully litigated factual findings; and (vi) specifically reserved jurisdiction to hear these claims post-confirmation. Reorganized Capmark is stuck between a rock and a hard place: On the one hand, Reorganized Capmark is the successor to the Committee – which withdrew its standing motion to pursue the claims at bar <u>with prejudice</u>. On the other hand, it is the successor

---

[1] Capitalized terms not otherwise defined have the meanings ascribed to them in the Memorandum of Law in Support of the Goldman Lenders' Motion to Transfer ("Transfer Brief" or "Transfer Br."). Reorganized Capmark's Memorandum of Law in Opposition to the Transfer Brief is referred to herein as "Opposition" or "Opp."

to the Debtors, who repeatedly represented to the Delaware Bankruptcy Court – both orally and in writing – that these claims were entirely without merit.

Unable to credibly quarrel with any of this, Reorganized Capmark attempts to justify its forum shopping by either wishing away these facts, arguing that the problem is that Judge Sontchi knows <u>too much</u> (!),[2] or suggesting that this all is somehow irrelevant because New York is the more convenient forum – despite the facts that (i) as Debtor, Capmark filed its bankruptcy case and (ii) Kasowitz/the Committee previously sought to prosecute <u>these very preference claims</u> in precisely the same Delaware forum that Kasowitz/Reorganized Capmark now seeks to avoid as inconvenient.

Reorganized Capmark's efforts to obfuscate both the facts and its own gamesmanship notwithstanding, transfer (back) to the District of Delaware is appropriate in the interest of justice.[3]  Transfer will promote efficiency and judicial economy by placing this matter before the judge who has an intimate familiarity with the parties, the complex underlying facts, and the very claims alleged.  Transfer will allow the judge who issued the order withdrawing the preference claims with prejudice and who made the detailed factual findings that are dispositive of these claims to interpret his order and determine the preclusive effect of his findings.  And transfer will avoid duplicative litigation and the risk of inconsistent results by placing the critical issue of the Goldman Lenders' alleged insider status before one court, not two.  Plaintiffs' hollow convenience arguments cannot overcome the fact that transfer is appropriate "in the interest of justice."

---

[2] <u>See</u> Opp. at 18 (citing <u>In re BearingPoint, Inc.</u>, 453 B.R. 486, 493 (Bankr. S.D.N.Y. 2011)).  In fact, <u>In re BearingPoint, Inc.</u> stands merely for the proposition that judges should make non-discretionary findings of fact based on record evidence rather than their outside-the-record knowledge of a case.  <u>See</u> 453 B.R. at 493.

[3] In addition to misrepresenting what occurred in the Delaware Bankruptcy Court, Reorganized Capmark misrepresents the Goldman Lenders' involvement in the 2009 secured credit facility.  (Opp. at 3-4.)  The Goldman Lenders will respond at an appropriate juncture and reserve all rights.

**ARGUMENT**

I.      **The Claims at Bar Were Extensively Litigated in the Delaware Bankruptcy Court**

The relevant facts are straightforward: Judge Sontchi (i) reviewed lengthy briefing concerning these claims;[4] (ii) held a hearing that concerned the colorability of these claims;[5] (iii) heard days of evidence concerning many of the key facts underlying these claims; (iv) issued a ninety-three page decision containing extensive factual findings that the Goldman Lenders believe are dispositive of these preference claims; (v) raised the issue of whether these claims are precluded by the factual findings he made; and (vi) expressly reserved jurisdiction to hear these claims post-confirmation. As set forth in the Goldman Lenders' opening brief, transfer is appropriate under these circumstances in the interests of judicial efficiency and justice. (See Transfer Br. at 2-8.)

Remarkably, Reorganized Capmark now contends that Judge Sontchi "never . . . even considered" the Committee's preference claims. (Opp. at 2.) That is demonstrably false. In order to gain standing to prosecute these claims, the Committee (i.e., Plaintiffs wearing their previous hats) had the burden of demonstrating that the preference claims were "colorable" and would likely benefit the estate. "[T]he test for 'colorable' is akin to a court's motion to dismiss analysis. However . . . the analysis does not end there. A court must also determine . . . the likely benefit to the estate which encompasses the likelihood of success of the proposed litigation." In re MIG, Inc., No. 09-12118 (KG), 2009 Bankr. LEXIS 4313, at *4-5 (Bankr. D.

---

[4] See Ex. C, Standing Mot. 39-41; Ex. D, Proposed Compl. 6-12, 18-21; Aug. 31, 2010 Response of the Goldman Lenders 2-5, Opp. Ex. 7; Ex. F, Reconsideration Objection 7-27; Apr. 1, 2011 Am. Reply of the Committee 15-27, attached hereto as Ex. O; Ex. G, Reconsideration Surreply 5-22.

[5] Reorganized Capmark's statement that Judge Sontchi indicated that he would not consider the reconsideration briefing in deciding the preference claims is incorrect and irrelevant. (See Opp. at 10.) In fact, Judge Sontchi stated that he would consider the reconsideration briefing "to the limited extent it discusses . . . the appropriateness of the record, and how that keys in." (Ex. H, April 11, 2011 Hr'g Tr. 25:5-12.) This is largely the question that will be at issue in this case: whether the extensive factual record developed before Judge Sontchi, and the detailed findings he made based on that factual record, preclude the preference claims as a matter of law.

Del. Dec. 18, 2009); see also Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.), 779 F.2d 901, 905 (2d Cir. 1985).  Accordingly, the Committee had the burden of demonstrating the preference claims' likelihood of success before Judge Sontchi, which was squarely at issue in the extensively briefed motion for reconsideration.

Not only did Judge Sontchi consider all this briefing and hold an April 11, 2011 hearing dedicated <u>exclusively</u> to the Committee's preference claims,[6] he made clear at the April 11, 2011 hearing that (1) the Committee bore the burden at the October 2010 evidentiary hearing to establish the colorability of its preference claims, and (2) he stood ready to rule <u>on the merits</u> on the colorability of those claims.  <u>At which point, the Committee withdrew with prejudice its motion to pursue the preference claims</u>.  (See Apr. 11, 2011 Hr'g Tr. 10:8-13, 23:19-21, 25:5-21, 32:16-33:6, 35:12-24, attached hereto as Ex. P.)  Further, Judge Sontchi expressly reserved jurisdiction to "hear and to determine any and all motions, adversary proceedings, applications, causes of action or other contested or litigated matters concerning or relating to the Preference Claims (to the extent ever brought)"  (Ex. I, May 24, 2011 Order at 3), and likewise retained jurisdiction to interpret and enforce his May 24, 2011 order concerning the preference claims.

## II.     Transferring This Action to the District of Delaware Is in the Interest of Justice

### A.     Efficiency and Judicial Economy Are Best Served by Transfer

Reorganized Capmark does not, because it cannot, dispute that transfer to the District of Delaware – where Judge Sontchi has presided over the complex Capmark Bankruptcy for more than two years, considered extensive briefing and held a hearing devoted to these very claims,

---

[6] Although Reorganized Capmark repeatedly asserts that the preference claims were sparingly addressed at the October 2010 evidentiary hearing (see Opp. at 8-9 & n.4), it largely ignores the April 11, 2011 hearing dedicated to the preference claims and the extensive briefing related thereto.  Moreover, Reorganized Capmark wrongly and repeatedly insists that the October 2010 evidentiary hearing was intended to address only settlement.  (See Opp. at 8-9.)  In fact, that hearing was intended to address both settlement <u>and</u> standing – including the Committee's standing to pursue the preference claims.  (Ex. E, Findings and Conclusions ¶ 14.)

4

and made detailed factual findings concerning the negotiations at issue that are dispositive of these claims – will conserve resources and result in the far more efficient adjudication of <u>this</u> action.  Instead, Reorganized Capmark argues that all of this does not matter because the Debtors have emerged from bankruptcy.  Reorganized Capmark misses the point.  Transfer is appropriate here, not because the reorganization plan is pre-confirmation, but because <u>this</u> case will be more efficiently and economically adjudicated by Judge Sontchi in Delaware – <u>where Plaintiffs' counsel first sought to bring it</u>.[7]  See, e.g., <u>Dahl v. HEM Pharm. Corp.</u>, 867 F. Supp. 194, 196-97 (S.D.N.Y. 1994) (that another court had already "extensively excavated" the relevant facts in a case that involved "the same factual nuclei" strongly supported transfer).

Reorganized Capmark's further suggestion that its blatant forum shopping should be countenanced because it deliberately waited until just after confirmation to reassert these claims in this Court is as cynical as it is unavailing.  See, e.g., <u>Adelphia Recovery Trust v. Bank of Am., N.A.</u>, No. 05 Civ. 9050 (LMM), 2009 U.S. Dist. LEXIS 39373, at *34 (S.D.N.Y. Mar. 5, 2009) (inefficiency of presiding over claims where another court was familiar with the facts and parties supported <u>post</u>-confirmation transfer); <u>Norkus Enters., Inc. v. Getty Oil Co.</u>, Civ. A. No. 04-4437 (MLC), 2005 U.S. Dist. LEXIS 29262, at *14-19 (D.N.J. Nov. 17, 2005) (transferring action <u>post</u>-confirmation because of bankruptcy court's familiarity even though all other factors weighed in favor of denying transfer).  Moreover, here, unlike in any case Reorganized Capmark cites, the transferee court has previously declared itself ready to "decide . . . on the merits" these very claims (Ex. P, Apr. 11, 2011 Hr'g Tr. 25:5-9; <u>see also</u> <u>id.</u> at 10:8-13, 23:19-21, 33:2-4,

---

[7] Reorganized Capmark cites <u>Northwest Airlines, Inc. v. City of Los Angeles (In re Nw. Airlines Corp.)</u>, 384 B.R. 51 (S.D.N.Y. 2008) for, among other things, the proposition that transfer is less compelling after confirmation.  That case, however, is inapposite.  As the Court noted there in evaluating transfer, "neither this Court, nor the Bankruptcy Court, has previously considered the issues raised by the adversary proceedings or has had reason to become familiar with the facts underlying this dispute."  <u>Id.</u> at 60-61.  Exactly the opposite is true of the transferee court here.

35:12-24), and has <u>indefinitely</u> reserved jurisdiction to "hear and to determine any and all . . . contested or litigated matters . . . relating to the Preference Claims (to the extent ever brought)." (Ex. I, May 24, 2011 Order at 3).  In short, Reorganized Capmark's argument that it can avoid Judge Sontchi because it cleverly waited to (re)assert the preference claims until after confirmation, is unavailing.  Indeed, this conduct should be seen for what it is:  part of a scheme to manufacture a fresh start in a new court.

Reorganized Capmark's argument that Judge Sontchi would not hear this case upon transfer because it will assert a right to a jury trial in a district court is makeweight.  A plaintiff has no right to a jury trial or an Article III court if its underlying claim asserts a "public right" – and in the bankruptcy context, a public right is asserted, <u>inter alia</u>, if "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." <u>Stern v. Marshall</u>, 131 S. Ct. 2594, 2618 (2011).  Because 11 U.S.C. § 547 insider preference claims are "derived from" and "dependent upon bankruptcy law," they "stem[ ] from the bankruptcy itself," <u>id.</u>, and because the Goldman Lenders have an outstanding claim for fees and expenses, the adjudication of Reorganized Capmark's preference claims is "integral to the restructuring of the debtor-creditor relationship" and thus is part of the claims allowance process. <u>Id.</u> at 2617 (citation and internal quotation marks omitted).  Indeed, Southern District judges have already ruled against parties who have improperly invoked <u>Stern</u> in efforts to forum shop lawsuits out of bankruptcy courts and into this District.[8]  Moreover, even if Reorganized Capmark's assertion of a right to a jury trial somehow had merit, it would be premature for a

---

[8] <u>See, e.g.</u>, <u>Walker, Truesdell, Roth & Assocs v. The Blackstone Grp., L.P. (In re Extended Stay, Inc.)</u>, Nos. 11 Civ. 5394-98, 5864 (SAS), 2011 U.S. Dist. LEXIS 131349, at *33-44 (S.D.N.Y. Nov. 10, 2011) (denying withdrawal of reference post-<u>Stern</u> because bankruptcy court adjudication of preference claims was more efficient, "narrow[ed] the issues to be resolved," "promote[d] a more uniform application of bankruptcy law," and "prevent[ed] . . . forum shopping").  By its own terms, further, <u>Stern</u> is a "narrow" decision that does not "meaningfully change[ ] the division of labor" between district and bankruptcy courts.  <u>Stern</u>, 131 S. Ct. at 2620 (internal quotation marks omitted).

district court to withdraw the reference before trial.  See, e.g., Walker, 2011 U.S. Dist. LEXIS 131349, at *38-40 (withdrawal of the reference based on jury trial demand "premature" where "discovery has not commenced and plaintiffs have not yet survived a motion to dismiss"); Am. Classic Voyages Co. v. Westaff (USA), Inc. (In re Am. Classic Voyages Co.), 337 B.R. 509, 510-12 (D. Del. 2006) (same).  Judge Sontchi would thus still rule on the critical issues of preclusion and the legal validity of the preference claims, as well as, in the unlikely event this case survives the motion to dismiss stage, any motion for summary judgment.

      B.      Judge Sontchi Is Best Positioned to Determine Preclusion Issues

Judge Sontchi can also most efficiently adjudicate the preclusion issues that are certain to arise as he heard the relevant evidence, issued the factual findings at issue, is closely familiar with the relevant parties, and has already raised the issue of the preclusive effect of his findings.  Rather than confront this point, Reorganized Capmark alleges – with scant citation to any authority – that the requirements for collateral estoppel are not met here.  While this is not the appropriate time for the Goldman Lenders to brief their collateral estoppel arguments, the following facts are uncontroverted:

- The Committee unsuccessfully sought standing to assert the instant preference claims against the Goldman Lenders in the Delaware Bankruptcy Court.

- Capmark repeatedly represented to Judge Sontchi that the preference claims against the Goldman Lenders were not colorable and were without merit.  (See Ex. M, Capmark Objection, ¶¶ 2 n.5, 30 n.9, 39 n.11, 43-44, 80.)

- Capmark represented and Judge Sontchi found that the relevant negotiations with Capmark were conducted at arm's length and the resulting transaction was on market terms.  (See Transfer Br. at 15-16; Debtors' Proposed Findings of Fact and Conclusions of Law ¶¶ 35, 38, attached hereto as Ex. Q.)

- Judge Sontchi himself added language to the withdrawal-with-prejudice order expressly reserving the Goldman Lenders' right to argue that Reorganized Capmark is the alter ego of the Committee, and, as such, permanently barred from asserting the preference claims.  (See Ex. I, May 24, 2011 Order at 3.)

In light of the foregoing, Reorganized Capmark's suggestion that the Goldman Lenders have no collateral estoppel argument is unfounded.

  C. <u>Transfer to the District of Delaware Avoids Duplicative Litigation</u>

In the Transfer Brief, the Goldman Lenders argued that transfer would avoid the risk of duplicative litigation and inconsistent results because adjudication of their claim for fees and expenses in the Delaware Bankruptcy Court will almost certainly require a determination as to their alleged insider status. In response, Reorganized Capmark argues only that it has not <u>yet</u> opposed the claim. (Opp. at 17.) From what Reorganized Capmark has coyly <u>not</u> said, it is clear that Reorganized Capmark is, at the very least, preserving its option to launch a duplicative insider status litigation in the Delaware Bankruptcy Court.

  D. <u>Plaintiffs' Choice of Forum Should Not Be Accorded Deference</u>

As demonstrated in the Transfer Brief, Reorganized Capmark's choice of forum is not entitled to deference because of its naked forum shopping, and because proceedings related to the Capmark Bankruptcy continue to take place in the District of Delaware. (Transfer Br. at 19-20.) Plaintiffs' attempts to explain their maneuvering on behalf of the Committee and Reorganized Capmark as anything other than an effort to rewind the clock and get a fresh start are not credible. The facts speak for themselves: Represented by the same counsel as the now-Plaintiffs, the Committee (i.e., Plaintiffs in a different guise) (i) sought standing to bring preference claims against the Goldman Lenders <u>in the Delaware Bankruptcy Court</u>, which required a showing of colorability; (ii) engaged in a five-day hearing where, among other things, the Committee was required to make a colorability showing; (iii) extensively briefed the colorability issue; (iv) realizing that their colorability showing fell short, requested that they be permitted to withdraw their claims without prejudice; (v) heard the Debtors repeatedly state that

the preference claims against the Goldman Lenders were not colorable and without merit; and (vi) heard Judge Sontchi suggest on April 11, 2011 that he was ready to rule on the colorability of the preference claims and that any withdrawal would therefore have to be <u>with prejudice</u>. Thereafter, the Committee immediately withdrew its standing motion with prejudice and then waited until Reorganized Capmark emerged from bankruptcy to (re)file these claims in this Court. Even worse, Kasowitz prepared the complaint while still the Committee's counsel. (Transfer Br. at 7 & n.10.) Plaintiffs' suggestion (<u>see</u> Opp. at 11-12) that their withdrawal with prejudice, five-month wait and filing in a new court were merely coincidental and were entirely unrelated to what happened in Judge Sontchi's courtroom strains credibility.

  E. <u>Reorganized Capmark's Other Factors Do Not Weigh Against Transfer</u>

To succeed on a motion to transfer under 28 U.S.C. § 1412, a movant simply must show that a preponderance of the evidence supports transfer in the interest of justice <u>or</u> for the convenience of the parties. <u>Urban v. Hurley</u>, 261 B.R. 587, 591 (S.D.N.Y. 2001) (Sweet, J.). The section 1412 analysis is flexible, and courts regularly consider different factors on a case-by-case basis.[9] Ignoring the flexible nature of the section 1412 inquiry, Reorganized Capmark's framework presumes that there are certain factors that this Court <u>must</u> consider – and that if any one of these factors is neutral, it weighs against transfer. (<u>See</u> Opp. at 5.) There is no support anywhere for this novel approach.[10]

---

[9] For recent examples of cases employing a flexible approach to section 1412, <u>see, e.g.</u>, <u>Hart v. Bello</u>, No. 11 Civ. 67 (RMB), 2011 U.S. Dist. LEXIS 45471, at *17-18 (S.D.N.Y. Apr. 27, 2011); <u>Burns v. Grupo Mex. S.A. de C.V.</u>, No. 07 Civ. 3496 (WHP), 2007 U.S. Dist. LEXIS 84514, at *15-18 (S.D.N.Y. Nov. 16, 2007); and <u>Norkin v. DLA Piper Rudnick Gray Cary, LLP</u>, No. 05 Civ. 9137 (DLC), 2006 U.S. Dist. LEXIS 14254, at *17 (S.D.N.Y. Mar. 31, 2006).

[10] Reorganized Capmark cites <u>Enron Corp. v. Arora (In re Enron Corp.)</u>, 317 B.R. 629, 648 (Bankr. S.D.N.Y. 2004) out of context for the proposition that "if any or all of these factors [under 28 U.S.C. § 1412] is 'at best neutral [it] thereby weighs in favor of retaining venue here.'" (Opp. at 5.) <u>In re Enron</u> does not remotely stand for that proposition.

9

**III.     The Convenience of the Parties Favors Transfer**

Both Reorganized Capmark (headquartered in Horsham, PA) and the Goldman Lenders are large financial companies with sophisticated lawyers (<u>including</u> local lawyers in Delaware) who can as easily ride the Acela as the Number 4 train.[11]  Reorganized Capmark attempts to portray New York as more convenient because lawyers involved in this litigation and certain documents are located in New York.  (Opp. at 23-24.)  The location of counsel, however, "carries little, if any, weight," <u>Reiffin v. Microsoft Corp.</u>, 104 F. Supp. 2d 48, 52 n.7 (D.D.C. 2000) (citation and internal quotation marks omitted), particularly where the parties have already retained Delaware counsel in connection with the Capmark Bankruptcy.  Similarly, "[i]n today's era of photocopying, fax machines, and Federal Express, the location of the documents is not a significant factor in the convenience analysis."  <u>It's a 10, Inc. v. PH Beauty Labs, Inc.</u>, 718 F. Supp. 2d 332, 336 (S.D.N.Y. 2010) (Sweet, J.) (citation and internal quotation marks omitted); <u>see also</u> <u>Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.</u>, 457 F. Supp. 2d 474, 478 (S.D.N.Y. 2006) (Sweet, J.).  Moreover, Reorganized Capmark's new convenience arguments are belied by the fact that Capmark itself chose Delaware – not New York – as the venue for its bankruptcy cases.

## **CONCLUSION**

For the reasons set forth above and in the Transfer Brief, the Goldman Lenders respectfully request that the Court transfer this action to the United States District Court for the District of Delaware pursuant to 28 U.S.C. § 1412.

---

[11] <u>See</u> <u>Renaissance Cosmetics, Inc. v. Dev. Specialists Inc.</u>, 277 B.R. 5, 19 (S.D.N.Y. 2002) (granting defendants' motion to transfer where "parties are large, national professional firms who would not be seriously inconvenienced if required to travel to Delaware").

Dated: January 13, 2012
New York, New York

By: /s/ Benjamin S. Kaminetzky
Marshall S. Huebner
Benjamin S. Kaminetzky
Andrew D. Schlichter
Hilary A.E. Dengel
Molly S. McDonnell
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 701-5800
ben.kaminetzky@davispolk.com

*Attorneys for Defendants Goldman Sachs Credit Partners L.P., Goldman Sachs Canada Credit Partners Co., Goldman Sachs Mortgage Company, and Goldman Sachs Lending Partners LLC*