USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3 5 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------X

CAPMARK FINANCIAL GROUP INC., ET AL.,

                Plaintiffs,

    -against-

GOLDMAN SACHS CREDIT PARTNERS L.P.,
ET AL.,

                Defendants.

11 Civ. 7511

OPINION

--------------------------------------X

A P P E A R A N C E S:

        Attorneys for Plaintiffs

        KASOWITZ, BENSON, TORRES & FREIDMAN, LLP
        1633 Broadway
        New York, NY  10019
        By:  Adam L. Shiff, Esq.
            Jeffrey Gleit, Esq.
            Michael Craig Harwood, Esq.
            Michele Lauren Angell, Esq.

        Attorney for Defendants

        DAVIS POLK & WARDWELL, LLP
        450 Lexington Avenue
        New York, NY  10017
        By:  Andrew Dickens Schlichter, Esq.
            Benjamin S. Kaminetzky, Esq.
            Hilary Allison Emily Dengel, Esq.
            Marshall Scott Huebner, Esq.

**Sweet, D.J.**

Defendants Goldman Sachs Credit Partners L.P., Goldman Sachs Canada Credit Partners Co., Goldman Sachs Mortgage Company and Goldman Sachs Lending Partners LLC (collectively, "Goldman Sachs" or the "Defendants") have moved to transfer this present action brought by Plaintiffs Capmark Financial Group Inc., Summit Crest Ventures, LLC, Capmark Capital LLC (f/k/a Capmark Capital Inc.), Capmark Finance LLC (f/k/a Capmark Finance Inc.), Commercial Equity Investments LLC (f/k/a Commercial Equity Investments, Inc.), Mortgage Investments, LLC, Net Lease Acquisition LLC, SJM CAP, LLC, Capmark Affordable Equity Holdings LLC (f/k/a Capmark Affordable Equity Holdings Inc.), Capmark Reo Holding LLC and Capmark Investments LP (collectively, the "Plaintiffs") to the District of Delaware pursuant to 28 U.S.C. § 1412.  Upon the conclusions set forth below, the Defendants' motion is denied.

**Prior Proceedings**

The Plaintiffs' predecessor debtors entered into two unsecured credit facilities in March 2006, pursuant to which they incurred $8.7 billion in unsecured debt from various

1

lenders, including the Defendants.  In connection with this loan, Goldman Sachs, along with other lenders, created a limited liability company that owned 75% of Plaintiff Capmark Financial Group Inc., and Goldman Sachs appointed a member to Capmark Financial Group Inc.'s Board of Directors.  In May 2009, the Plaintiffs' predecessor partially repaid this debt by entering into a $1.5 billion secured credit facility.  According to the Plaintiffs, as a lender with a member on Capmark Financial Group Inc.'s Board of Directors, Goldman Sachs stood on both sides of this new loan.  The Plaintiffs contend that, as a result of this transaction, the Defendants received $147 million to reduce their unsecured loan and held a new secured loan that was better positioned to receive payment in full when the Plaintiffs' predecessor entity declared bankruptcy in October 2009.

On October 25, 2009, Capmark Financial Group Inc. along with certain of its subsidiaries ("Capmark") commenced voluntary chapter 11 cases in the United States Bankruptcy Court for the District of Delaware.  According to the Defendants, on August 10, 2010, the Official Committee of Unsecured Creditors (the "Committee") filed a motion seeking standing to pursue a preference action against certain Goldman Sachs creditors.  Both the Committee and the Plaintiffs in this action are represented

2

by the same counsel.  On October 14, 2010, the Hon. Christopher

S. Sontchi, United States Bankruptcy Judge for the District of

Delaware, commenced a hearing to consider both a pending

settlement between Capmark and its secured lenders as well as

whether the Committee's preference claims against the Goldman

Sachs creditors were colorable.  The hearing lasted five-days,

and Judge Sontchi heard witness testimony, reviewed deposition

excerpts, emails, as well as other evidence and heard argument

from counsel.  On November 1, 2010, Judge Sontchi issued a

ninety-three page document entitled "Findings and Conclusions"

that approved the settlement and denied as moot the Committee's

motion for standing to pursue the preference claims.

        The Committee filed a motion for reconsideration as to

its standing to pursue the preference claims.  Judge Sontchi

held a hearing on the Committee's reconsideration motion on

April 11, 2011.  According to the Defendants, at that hearing,

Judge Sontchi explained that while he did not consciously intend

to characterize the Committee's preference claims as moot, he

stood ready to expand his Findings and Conclusions to address

those claims.  The Defendants contend that as it became

increasingly apparent at the hearing that Judge Sontchi might

issue a definitive adverse ruling on the merits as to the

preference claims, the Committee sought to withdraw its standing

motion without prejudice with leave to refile.  Judge Sontchi

refused, instead holding that any dismissal or withdrawal of the

motion would be with prejudice.  The Committee then withdrew

with prejudice its motion for standing to pursue the preference

claims.  The Plaintiffs' disagree with the Defendants'

characterization of the April 2011 hearing, instead noting that

the Bankruptcy Court acknowledged that its opinion was not

intended to address the Committee's standing to bring the

insider preference claims, which were independent of the

approved settlement.


          According to the Defendants, Judge Sontchi, in his

order approving the Committee's withdrawal of its standing

motion with prejudice, expressly reserved the Goldman Sachs

creditors' right to argue that the Plaintiffs, as the

reorganized entity emerging out of the chapter 11 proceedings,

are the alter ego of the Committee, and, as such, are likewise

precluded from asserting the preference claims.  The Defendants

also contend that the Bankruptcy Court reserved jurisdiction

over this issue.  The Plaintiffs dispute this characterization

of the Bankruptcy Court's order.  According to the Plaintiffs,

on August 24, 2011, Judge Sontchi confirmed the debtors' plan or

4

reorganization, under which the Plaintiffs retained the right to prosecute the insider preference claims that are the subject of this action.

On September 30, 2011, Capmark emerged from bankruptcy, the Committee dissolved and the Committee's constituents acquired over 99% of the equity in the Plaintiffs, who are the reorganized debtor that emerged from the bankruptcy proceedings. On October 24, 2011, the Plaintiffs commenced the present action in the Southern District of New York seeking to avoid and recover as insider preferences $147 million in transfers made by the Plaintiffs' predecessors to the Defendants within a year before the Debtors filed their petitions for reorganization in bankruptcy. According to the Defendants, the Plaintiffs in this action are the Committee in a different guise, represented by the same counsel, seeking the same relief that the Committee earlier sought before Judge Sontchi.

**The Applicable Standard**

"A district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28

5

U.S.C. 1412.  Section 1412 is "worded in the disjunctive allowing a case to be transferred under either the interest of justice rationale or the convenience of the parties rationale." In re EB Capital Mgmt. LLC, No. 11-12646 (MG), 2011 WL 2838115, at *3 (Bankr. S.D.N.Y. Jul. 14, 2011) (citing In re Enron Corp., 317 B.R. 629, 637 (Bankr. S.D.N.Y. 2004)).  The decision to transfer venue is within the discretion of the court, see EB Capital Mgmt., 2011 WL 2838115, at *3 (citing Enron, 317 B.R. at 638 n.8), and a court should base its analysis on the facts underlying each particular case.  EB Capital Mgmt., 2011 WL 2838115, at *3 (citing In re Manville Forest Prods. Corp., 896 F.2d 1384, 1391 (2d Cir. 1990)).  However, a debtor's selection of a proper venue is entitled to great weight, and "a heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weighs in his favor."  EB Capital Mgmt., 2011 WL 2838115, at *3 (citing Enron, 317 B.R. at 342; In re Lionel Corp., 24 B.R. 141, 142 (Bankr. S.D.N.Y. 1982)); see also Manville, 896 F.2d at 1390 ("The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence.").

     The interest of justice prong has been characterized as a broad and flexible standard.  EB Capital Mgmt., 2011 WL

6

2838115, at *4.  "The court considers whether (i) transfer would promote the economic and efficient administration of the bankruptcy estate; (ii) the interests of judicial economy would be served by the transfer; (iii) the parties would be able to receive a fair trial in each of the possible venues; (iv) either forum has an interest in having the controversy decided within its borders; (v) the enforceability of any judgment would be affected by the transfer; and (vi) the plaintiff's original choice of forum should be disturbed."  Id. (citing In re Dunmore Homes, Inc., 380 B.R. 663, 672 (Bankr. S.D.N.Y. 2008)).

"The convenience of the parties prong has six factors: (i) proximity of creditors of every kind to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result."  EB Capital Mgmt., 2011 WL 2838115, at *4 (citing Dunmore Homes, 380 B.R. at 676).

A party seeking transfer under 28 U.S.C. § 1412 must meet its burden under a preponderance of the evidence standard. See Manville, 896 F.2d at 1390; Urban v. Hurley, 261 B.R. 587,

7

591 (S.D.N.Y. 2001) ("Transfer of venue pursuant to 28 U.S.C. § 1412 is discretionary, and the party moving to attack venue must establish its burden by a preponderance of evidence."). If any factor is "at best neutral [it] thereby weighs in favor of retaining venue here." Enron, 317 B.R. at 648.

**The Defendants' Motion To Transfer The Present Action To The District Of Delaware Pursuant To 28 U.S.C. § 1412 Is Denied**

The Defendants have failed to carry their burden to establish either that transferring this action to the District of Delaware is in the interest of justice or that the convenience of the parties favors transfer. Accordingly, the Defendants' motion to transfer is denied.

**A. The Defendants Have Failed To Establish That Transferring This Action To The District Of Delaware Is In The Interest Of Justice**

The Defendants contend that, because this action presents the same parties who appeared in the Capmark bankruptcy action and the same factual history with which Judge Sontchi is familiar, the interests of justice favor transferring this case to the District of Delaware. According to the Defendants, the

8

interests of efficiency and judicial economy are best served by
transfer, and transfer is further warranted because Judge
Sontchi is best positioned to consider the preclusive effect of
his November 1, 2010 factual findings on the Plaintiffs' claims.
However, applying the six factor analysis outlined above reveals
that the Defendants have not demonstrated that transfer is in
the interest of justice.

### 1. Whether Transfer Would Promote The Economic And Efficient Administration Of The Bankruptcy Estate

The first factor to be applied concerns whether
transfer would promote the economic and efficient administration
of the bankruptcy estate.  EB Capital Mgmt., 2011 WL 2838115, at
*4.  As a general matter, "the district in which the underlying
bankruptcy case is pending is presumed to be the appropriate
district for hearing and determination of a proceeding in
bankruptcy."  Manville, 896 F.2d at 1391 (citing Lionel, 24 B.R.
at 143).  "[T]he interests of justice and the public interest in
centralization of bankruptcy proceedings weigh heavily in favor
of retaining [a core bankruptcy proceeding] where the underlying
bankruptcy case is being adjudicated."  In re Iridium Operating
LLC, 285 B.R. 822, 837 (S.D.N.Y. 2002).  In examining the

9

interests of justice, a principal consideration is the promotion

of efficiency and judicial economy, both of which are advanced

when a bankruptcy proceeding is transferred to the district in

which a bankruptcy is pending.  See, e.g., Adelphia Recovery

Trust v. Bank of Am., N.A., No. 05 Civ. 9050(LMM), 2009 WL

636719, at *7 (S.D.N.Y. Mar. 5, 2009).  Where a bankruptcy

proceeding involves a "substantial learning curve" transfer

pursuant to 28 U.S.C. § 1412 is appropriate.  Manville, 896 F.2d

at 1391.

          In evaluating whether the economic and efficient

administration of the bankruptcy estate will be promoted by a

transfer, it must be noted that after a "plan has been confirmed

by the Bankruptcy Court, any presumption in favor of maintaining

the venue . . . before the Bankruptcy Court is substantially

weakened."  In re Northwest Airlines Corp., 384 B.R. 51, 61-62

(S.D.N.Y. 2008) (citing Mirant Corp. v. The Southern Co., 337

B.R. 107, 124 (N.D. Tex. 2006) ("Any such presumption [in favor

of the venue of the bankruptcy case] in this case has been

significantly weakened, if not entirely destroyed, by the

circumstance that this now is post-confirmation litigation.")).

In this case, the Bankruptcy Court in the District of Delaware

has confirmed a plan, thereby weakening any presumption that the

10

District of Delaware is the appropriate venue for the present
action.

### 2. Whether The Interests Of Judicial Economy Would Be Served By The Transfer

The second factor to be applied concerns whether
transfer would promote the interests of judicial economy.  EB
Capital Mgmt., 2011 WL 2838115, at *4.  The Defendants contend
that transferring this action would promote the interests of
judicial economy because the Bankruptcy Court for the District
of Delaware has already received extensive briefing and argument
and engaged in substantial fact-finding concerning the issues
raised in the present action.  Additionally, the Defendants
state that Judge Sontchi is best positioned to determine
preclusion issues and that transfer to the District of Delaware
would avoid any potential for duplicative litigation.

### a. The Bankruptcy Court Has Not Addressed The Merits Of The Plaintiffs' Insider Preference Claims Nor Retained Exclusive Jurisdiction

The Defendants contend that transferring this action
to the District of Delaware would eliminate the need for this

11

Court to devote resources to understanding the factual history surrounding the Capmark bankruptcy proceeding as well as the legal and factual issues that have already been briefed and argued before Judge Sontchi. According to the Defendants, transfer is appropriate because Judge Sontchi is familiar with the facts of this proceeding, as evidenced by both his presiding over a hearing at which evidence related to many of the issues that are now central to the Plaintiffs' claims was adduced and his ninety-three page opinion addressing that evidence. Additionally, the Defendants note that Judge Sontchi is familiar with the specific issue of preference claims because the briefing on the motion for reconsideration, which focused on whether the Committee's preference claims were colorable, ran to more than eighty-five pages. The Defendants contend that Judge Sontchi was ready to rule on these issues based on the record before him and that he expressly retained jurisdiction to interpret and enforce his May 24, 2011 order concerning the preference claims and to "hear and to determine any and all motions, adversary proceedings, applications, causes of action or other contested or litigated matters concerning or relating to the Preference Claims (to the extent ever brought)."

12

A review of the prior proceedings in the Bankruptcy
Court for the District of Delaware reveals that Judge Sontchi
never considered the merits of the insider preference claims.
Although a five-day hearing was held in October 2010, the
substance of that hearing concerned the Committee's settlement
of avoidance claims that it had sought standing to prosecute.
The issue of the Defendants' alleged insider status was not the
subject of those hearings, as evidenced by several comments made
by the Defendants' attorneys during that hearing.  See, e.g.,
Hr'g Tr. Oct. 14, 2010, 38:19-20 ("[I]f and when we ever have to
prove that the Goldman Sachs lending entities were not insiders,
did not receive a preference, we certainly stand more than ready
to do so."); Hr'g Tr. Oct. 19, 2010, 151:16-19 ("I know this is
not an issue today, as the preference claims against Goldman
Sachs were specifically carved out of the settlement agreement,
and is not an issue at this hearing."); Hr'g Tr. Oct. 19, 2010,
151:25-152:1 ("[T]he issue of Goldman Sachs alleged insider
status is not before the Court today").

With respect to the standing motion that was
considered at the same time as the settlement, the issue before
the Court was whether the Committee's insider preference claims
were "colorable."  Generally, a creditors' committee seeking to

13

prosecute claims on a debtor's behalf must show "(1) a colorable claim, (2) that the trustee unjustifiably refused to pursue the claim, and (3) the permission of the bankruptcy court to initiate the action." In re Yes! Entm't Corp., 316 B.R. 141, 145 (D. Del. 2004). Although the Defendants deny that any Goldman Sachs entity is an insider, the Defendants did not dispute the Committee's position that the Committee should be able to prosecute the preference claims. See Hr'g Tr. Oct. 14, 2010, 37:15-22 ("[W]e can be pursued for 547 preference claims on the allegation that we were non-statutory insiders at the time that the collateral was granted or the transactions were done in '09, and that therefore there was a preference. On that point, which I am not addressing, bring it on. We are delighted to go to battle on that, and have no concerns whatsoever on the merits."); Hr'g Tr. Oct. 26, 2010, 49:12-15 ("We never endorsed their standing motion. We said what we should be saying. This is not our hearing. As the potential future defendant, we shouldn't be here saying, We want this plaintiff, not this plaintiff, or vice versa."). There is no indication from the record that the October 2010 hearing addressed the merits of the Plaintiffs' insider preference claims.

The Defendants also highlight Judge Sontchi's ninety-three page "Findings and Conclusions" issued on November 1. However, Judge Sontchi's subsequent remarks concerning the substance of his November 1 opinion reveal that his "Findings and Conclusions" did not address the merits of the Plaintiffs' insider preference claims:

> Let me tell you up front that when I wrote that the standing motion is moot, I didn't have the insider preference claims in my mind. I, that sentence meant and referred to the standing motion in connection with the settled claims. So from a substantive standpoint, I haven't written anything on the standing motion in connection with the insider preference claims, except for, and to the extent that the factual findings that I made in connection with the hearing would be relevant.

Hr'g Tr. Apr. 11, 2011, 5:24-6:7. This passage reveals that, although the Bankruptcy Court's November 1 "Findings and Conclusions" found that the Committee's standing motion was moot because of the settlement, the Bankruptcy Court did not recognize the fact that the insider preference claims were not part of the settlement. For this reason, the Plaintiffs filed a motion for reconsideration, which the Bankruptcy Court subsequently granted. At the April 11, 2011 hearing concerning the motion for reconsideration, Judge Sontchi further clarified his November 1 opinion:

15

> Well, here's what I'd like to do.  And that is, I will
> grant the motion for reconsideration, in part, to clarify
> that my ruling that the standing motion is moot applied
> only to the settled claims.  And not the non-insider
> preference claims.

Hr'g Tr. Apr. 11, 2011, 23:15-19.  As such, the ninety-three

page opinion Judge Sontchi issued on November 1, 2010 is no

indication that a court has already resolved the issue raised in

the present action.  Additionally, the fact that the Committee

withdrew the standing motion with prejudice does not preclude

the Plaintiffs' present action, as the record indicates that the

Bankruptcy Court did not consider whether the preference claims

were colorable.  See Northwest, 384 B.R. at 61 (although debtor

argued that bankruptcy court was familiar with an issue because

it was addressed by plaintiff in certain motions and briefed by

debtor in an objection, venue transferred away from the

bankruptcy court because the "initial motion for relief . . .

was not heard because [the movant] withdrew it").


        Another of the Defendants' arguments concerns the

Bankruptcy Court's express indication that it wanted to reserve

jurisdiction over the claim raised in the present action.  The

Defendants highlight the Bankruptcy Court's May 24, 2011 order

granting the Committee's motion for reconsideration in which
Judge Sontchi stated:

> ORDERED that the right of the Goldman Lenders and any of
> their affiliates to assert that none of the Committee, the
> Debtors, the reorganized Debtors, nor any other party or
> any party purporting to succeed or actually succeeding to
> the rights of the Committee or the Debtors shall have
> standing to prosecute the Preference Claim, e.g., solely by
> example, to argue that the Debtors or reorganized Debtors
> are an alter ego of or a de factor successor to the
> Committee, is expressly reserved; and it is further
>
> ORDERED that the Court retains jurisdiction: (1) to
> interpret and to enforce the terms of this Order; and (2)
> to hear and to determine any and all motions, adversary
> proceedings, applications, causes of action or other
> contested or litigated matters concerning or relating to
> the Preference Claims (to the extent ever brought)[.]

However, a July 6, 2011 hearing before the Bankruptcy Court
establishes that Judge Sontchi was not retaining "exclusive"
jurisdiction over the Plaintiffs' preference claims:

> THE COURT: Obviously, everyone's rights are reserved in
> connection with whether venue is appropriate in any
> location.
>
> MR. SHIFF: Understood.  Thank you.
>
> THE COURT: And jurisdiction.
>
> MR. SHIFF: Thank you.
>
> THE COURT: And I'm pretty sure the U.S. Supreme Court in
> it's current, as currently set up, would not have liked me

17

to retain exclusive jurisdiction over pretty much anything.
And I'm not going to.

Hr'g Tr. Jul. 6, 2011, 58:9-18.  Thus, it appears that the

Bankruptcy Court did not retain exclusive jurisdiction over the

matter raised in the Plaintiffs' present complaint.

### b. No Issues Of Collateral Estoppel Or Res Judicata Exist

The Defendants contend that the present action should

be transferred because Judge Sontchi is best positioned to

determine the collateral estoppel implications of his November

1, 2010 Findings and Conclusions, which the Defendants believe

preclude most of the Plaintiffs' claims and will be a key

subject of the Defendants' anticipated motion to dismiss.  In

particular, the Defendants draw attention to Judge Sontchi's

findings that the terms of the 2009 secured credit facility were

"market terms" that were reached after hard-fought, extensive

arm's length negotiations, noting that such findings bear

directly on the Plaintiffs' insider preference claim.  The

Defendants also contend that Judge Sontchi is best able to

interpret language in his opinion that the Defendants claim

reserved the Defendants' right to argue that the Plaintiffs are

18

the alter ego of the Committee and, as such are barred from
asserting the preference claims.

     "To prove that a claim is precluded under [res
judicata], 'a party must show that (1) the previous action
involved an adjudication on the merits; (2) the previous action
involved the [parties] or those in privity with them; [and] (3)
the claims asserted in the subsequent action were, or could have
been, raised in the prior action.'"  Pike v. Freeman, 266 F.3d
78, 91 (2d Cir. 2001) (quoting Monahan v. N.Y.C. Dep't of Corr.,
214 F.3d 275, 284-85 (2d Cir. 2000)).  For collateral estoppel,
a party must establish four elements: "'(1) the identical issue
was raised in a previous proceeding; (2) the issue was actually
litigated and decided in the previous proceeding; (3) the party
had a full and fair opportunity to litigate the issue; and (4)
the resolution of the issue was necessary to support a valid and
final judgment on the merits.'"  Ball v. A.O. Smith Corp., 451
F.3d 66, 69 (2d Cir. 2006) (quoting Purdy v. Zeldes, 337 F.3d
253, 258, n.5 (2d Cir. 2003)).

     In this case, neither res judicata nor collateral
estoppel applies.  As described above, Judge Sontchi's "Findings
and Conclusions" approved the settlement of other avoidance

19

actions and did not reach the question of whether the Committee
had standing to pursue the insider preference claims.   The
merits of the insider preference claims were never addressed.
Additionally, neither the issues necessary to approve the
settlement nor the issues relevant to the Committee's standing
motion (the merits of which the Bankruptcy Court did not
address) were identical to the issues raised in this action.   In
order to approve the settlement, Fed. R. Bank. P. 9019 required
that the Bankruptcy Court "canvass the issues to determine if
the settlement falls below the lowest point in the range of
reasonableness."   In re WorldCom, Inc., 347 B.R. 123, 137
(Bankr. S.D.N.Y. 2006) (citing In re Teltronics Serv., Inc., 762
F.2d 185, 189 (2d Cir. 1985)).   The Bankruptcy Court did not
have to determine whether the insider preference claims would be
successful, but rather only if the settlement was fair to
creditors.

As noted above, the Defendants highlight two
statements included in Judge Sontchi's "Findings and
Conclusions," including that the 2009 secured credit facility
was "on market terms" and that the terms were reached after
hard-fought, extensive arm's length negotiations.   Although
these statements may support the Defendants' contention that

they were not insiders, the statements were neither necessary to the Fed. R. Bankr. P. 9019 standard of fairness, nor did the Bankruptcy Court make these statements in the context of insider status.  The issues concerning the Defendants' insider status were not actually litigated and decided at the settlement hearing, but rather were expressly carved out of the Bankruptcy Court's opinion.  Accordingly, Judge Sontchi's November 1, 2010 "Findings and Conclusions" do not present an issue of res judicata or collateral estoppel.

## c. The Risk Of Duplicative Or Overlapping Litigation Is Speculative

According to the Defendants, transfer to the District of Delaware would avoid the risk of duplicative litigation and inconsistent results.  The Plaintiffs' claims allege that the Defendants were insiders of Capmark, thereby requiring this Court, should it deny the Defendants' motion to transfer, to determine whether any of the Goldman Sachs entities were insiders at the time Capmark obtained the 2009 secured credit facility.  The Defendants, anticipating the Plaintiffs' argument that any rights accrued to the Defendants under the 2009 secured credit facility should be avoided as a result of the Defendants'

21

alleged insider status, contend that Judge Sontchi will have to make a similar determination in evaluating the Defendants pending claim for fees and expenses.  According to the Defendants, because the two courts will have to address the same issue, there is a material risk of inconsistent rulings and overlapping litigation should the Defendants' motion to transfer be denied.

Although the Defendants' predictions may come to fruition, at this time, the Defendants' claim for fees and expenses remains pending in the Bankruptcy Court.  The Plaintiffs have yet to make the arguments that the Defendants anticipate.  As such, the Defendants' concern regarding duplicative or overlapping litigation is speculative and premature at this time.  In the event that the merits of the insider status of the Defendants is presented to both courts, the priority of determination may serve to eliminate the risk of duplicative litigation.

> **d. If The Case Were Transferred, There Is No Guarantee That Judge Sontchi Would Be The Trier Of Fact**

The Defendants rest their judicial economy argument on the assumption that Judge Sontchi would be the trier of fact in this action if the Defendants' motion were to be granted. However, it must be noted that 28 U.S.C. § 1412 only affords this Court the power to transfer this case "to a district court for another district," not directly to Judge Sontchi on the Delaware Bankruptcy Court.  Additionally, this case presents jurisdictional issues that could result in the case being tried in the United States District Court for the District of Delaware, rather than the Delaware Bankruptcy Court.

According to the Plaintiffs, the Supreme Court has "indicated that where a preference action seeks only money payments without otherwise requesting any type of equitable relief, the action is legal in nature and a right to a jury trial exists." In re Bennett, 154 B.R. 126, 135 (Bankr. N.D.N.Y. 1992) (citing Granfinanciera, S.A. v. Nordberg, 492 U.S. 33, 48-50, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989)).  Because a bankruptcy court cannot conduct a jury trial without the Plaintiffs' consent, see 28 U.S.C. § 157(e), the Plaintiffs contend that, should the Defendants' motion be granted, this case will be tried in the United States District Court for the District of Delaware, removing the possibility of Judge Sontchi

deciding the matter and eliminating any justification for transferring the case.

The Defendants contend that a plaintiff has no right to a jury trial or an Article III court if its underlying claim asserts a "public right," and, under recent Supreme Court precedent, a public right is asserted in the bankruptcy context if "the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." Stern v. Marshall, 131 S.Ct. 2594, 2618 (2011). According to the Defendants, because 11 U.S.C. § 547 insider preference claims are "derived from" and "dependent upon bankruptcy law," they "stem[] from the bankruptcy itself." Id.

The impact of the recent Stern decision on the jurisdiction of bankruptcy courts remains unclear. In Stern, the Supreme Court held that, although a bankruptcy court had statutory authority under 28 U.S.C. § 157 to issue a final and binding judgment on a claim based exclusively on a right assured by state law, the bankruptcy court nonetheless lacked the constitutional authority to do so. Stern, 131 S.Ct. at 2620. The venue to which the Defendants seek to transfer this action,

24

the Delaware Bankruptcy Court, has recognized the jurisdictional

confusion the Stern decision has created:

> There are two views as to the effect and holding of Stern.
> The broad interpretation, espoused by defendants of
> preference and fraudulent transfer actions, is that Stern
> strips bankruptcy courts of authority to enter a final
> judgment in any case where the debtor is bringing any
> action which seeks to augment the estate because they are
> legal actions that seek to take another's property and can
> only be finally adjudicated by an Article III judge (the
> "Broad Interpretation").
>
> Conversely, Stern also has been narrowly interpreted by
> debtors and bankruptcy trustees.  They argue that by its
> express language, the opinion stands for a narrow
> proposition of law based on the unique set of facts that
> was before the Supreme Court in Stern and that the Supreme
> Court did not divest bankruptcy courts of authority to
> enter final orders on core matters, other than a Debtor's
> state law counterclaim.  Further, the Supreme Court did not
> intend to alter the division of labor between the district
> courts and the bankruptcy courts.  The narrow
> interpretation argues that Stern does not (1) limit
> bankruptcy courts' authority to enter final orders in
> preference or fraudulent conveyance actions (even if those
> actions seek to augment the estate), or (2) prohibit
> bankruptcy courts from ruling on a debtor's or trustee's
> state law counterclaims when determining a proof of claim
> in the bankruptcy, or when deciding a matter that is
> directly and conclusively related to the bankruptcy (the
> "Narrow Interpretation").  Complicating the holding is
> Justice Scalia's partial concurrence which undermines the
> rationale set forth by Chief Justice Roberts and the
> argument that Stern is a majority opinion standing for the
> Broad Interpretation.  In the face of confusion, the Court
> as have many others throughout the nation, will attempt to
> present a reasoned analysis of the issues before it, based
> on this Court's interpretation of Stern.

In re Direct Response Media, Inc., No. 10-10058 (KG), 2012 WL
112503, at *5 (Bankr. D. Del. Jan. 12, 2012).  Immediately
following this passage in Direct Response Media is a footnote in
which the Delaware Bankruptcy Court states: "The Court has found
in excess of 130 cases in which bankruptcy courts have addressed
Stern.  The analyses and decisions are not consistent."  Direct
Response Media, 2012 WL 112503, at *27 n.7.  Given this
uncertainty surrounding the recent Stern decision, the scope of
Judge Sontchi's authority to decide the preference claims,
assuming he were granted the opportunity to hear them, is
unclear.  The fact that there is no guarantee that Judge Sontchi
would be the trier of fact weakens the argument that transfer to
the District of Delaware would promote judicial economy.

### 3. Whether The Parties Would Be Able To Receive A Fair Trial In Each Of The Possible Venues

The third factor to be applied concerns whether the
parties would be able to receive a fair trial in each of the
possible venues.  EB Capital Mgmt., 2011 WL 2838115, at *4.
Neither party has raised any concern with respect to the
fairness of a proceeding either in the District of Delaware or
the Southern District of New York.

### 4. Whether Either Forum Has An Interest In Having The Controversy Decided Within Its Borders

The fourth factor to be applied concerns whether either forum has an interest in having the controversy decided within its borders.  EB Capital Mgmt., 2011 WL 2838115, at *4.  The Plaintiffs note that Goldman Sachs is a large financial institution based in New York, that the transfers at issue took place in New York pursuant to an agreement that identified New York as a non-exclusive venue for any disputes and contained a New York choice of law provision and that the transaction was administered through Citicorp North America, Inc. and Citibank N.A., which are New York-based administrative and collateral agents.  See Official Committee of Asbestos Claimants of G-I Holding, Inc. v. Heyman, 306 B.R. 746, 750 (S.D.N.Y. 2004) ("the fact that '[t]he primary operative facts underlying this action' occurred in Manhattan is significant") (quoting Pinto v. Doskocil, 91 Civ. 1518, 1991 WL 207523, at *8 (S.D.N.Y. Oct. 3, 1991)).  However, considering that the parties involved are large corporations with both parties still engaged in litigation in Delaware, the significance of this fourth factor is minimal.

27

**5. Whether The Enforceability Of Any Judgment Would Be Affected By The Transfer**

The fifth factor to be applied concerns whether the enforceability of any judgment would be affected by the transfer.  <u>EB Capital Mgmt.</u>, 2011 WL 2838115, at *4.  There is no indication that either forum has an advantage concerning the enforceability of a judgment.

**6. Whether The Plaintiffs' Original Choice Of Forum Should Be Disturbed**

The final factor to be considered is whether the plaintiff's original choice of forum should be disturbed.  <u>EB Capital Mgmt.</u>, 2011 WL 2838115, at *4.  The Defendants contend that the district of the underlying bankruptcy is most appropriate to hear this action and that the Plaintiffs' choice of forum is entitled to less weight in light of the fact that the Plaintiffs do not reside in the Southern District of New York and only selected this forum for tactical advantage.  See <u>Iragorri v. United Techs. Corp.</u>, 274 F.3d 65, 72 (2d Cir. 2001) ("[T]he more it appears that the plaintiff's choice of a U.S. forum was motivated by forum-shopping reasons . . . the less deference the plaintiff's choice commands").

28

In evaluating at Section 1412 motion, "the district in which the underlying bankruptcy case is pending is presumed to be the appropriate district for hearing and determination of a proceeding in bankruptcy." Manville, 896 F.2d at 1391. However, in this case, a plan concerning Capmark's reorganization and emergence from chapter 11 has been confirmed. Even if the plan had not yet been confirmed, this factor likely comes out neutral, as "[t]he two presumptions [plaintiffs' choice and where the bankruptcy is pending] effectively cancel each other out, and the motion will accordingly be decided on the basis of the remaining factors." Heyman, 306 B.R. at 750.

Applying the relevant six factors reveals that the Defendants have not met their burden of establishing that a transfer pursuant to 28 U.S.C. § 1412 is in the interest of justice.

**B. The Defendants Have Failed To Establish That Transferring This Action To The District Of Delaware Is Convenient To The Parties And Witnesses**

As noted above, "[t]he convenience of the parties prong has six factors: (i) proximity of creditors of every kind

29

to the court; (ii) proximity of the debtor; (iii) proximity of witnesses necessary to the administration of the estate; (iv) location of the assets; (v) economic administration of the estate; and (vi) necessity for ancillary administration if liquidation should result." EB Capital Mgmt., 2011 WL 2838115, at *4 (citing Dunmore Homes, 380 B.R. at 676).

According to the Defendants, the District of Delaware, where the Capmark bankruptcy remains open, is the more convenient location.  Nine of the eleven plaintiffs are either Delaware limited liability companies or Delaware limited partnerships, and the two that are not have their principal places of business in Horsham, Pennsylvania, which is forty-five miles from Delaware.  No Plaintiff is incorporated or has its principal place of business in the Southern District of New York, which is twice as far from Horsham.  The Defendants also note that, notwithstanding the Plaintiffs' contention that the attorneys involved are all based in New York, the location of counsel "carries little, if any, weight," Reiffin v. Microsoft Corp., 104 F. Supp. 2d 48, 52 n.7 (D.D.C. 2000), particularly where the parties have already retained Delaware counsel in connection with the Capmark bankruptcy proceeding. Additionally, "[i]n today's era of photocopying, fax machines,

30

and Federal Express, the location of the documents is not a significant factor in the convenience analysis." It's a 10, Inc. v. PH Beauty Labs, Inc., 718 F. Supp. 2d 332, 336 (S.D.N.Y. 2010).

The Plaintiffs highlight the fact that all but one of the Defendants is located in New York City and that the other Defendant, Goldman Sachs Canada Credit Partners Co. has offices or operations in New York City. The Plaintiffs operate an office in New York City and the transaction at issue took place in the Southern District of New York, pursuant to an agreement that identified New York as the non-exclusive venue for any disputes and contained a New York choice of law clause. In addition to their arguments concerning the location of counsel and documents, the Plaintiffs contend that the Southern District of New York is more convenient with respect to non-party witnesses. See Heyman, 306 B.R. at 749-50 ("In determining whether to grant a motion for transfer under § 1412, courts consider . . . the convenience of witnesses . . . ."); see also PH Beauty Labs, 718 F. Supp. 2d at 336 ("[T]he convenience of non-party witnesses is accorded more weight than that of party witnesses.").

31

Additionally, the Plaintiffs cite Fed. R. Civ. P. 45(c)(3)(A)(ii) for the proposition that a court must quash or modify a subpoena that "requires a person who is neither a party nor a party's officer to travel more than 100 miles from where that person resides, is employed, or regularly transacts business in person." Fed. R. Civ. P. 45(c)(3)(A)(ii). According to the Plaintiffs, in this matter, substantially all, if not all, of the non-party witnesses work in New York, which is more than 100 miles from the District of Delaware. Furthermore, "[t]he availability of compulsory process over material non-party witnesses is an important factor" in the venue transfer analysis. Citigroup Inc. v. City Holding Co., 97 F. Supp. 2d 549, 561 (S.D.N.Y. 2000).

As noted above, the power to transfer a case should be exercised cautiously, and "a heavy burden of proof rests on the moving party to demonstrate that the balance of convenience clearly weighs in his favor." EB Capital Mgmt., 2011 WL 2838115, at *3; see also Manville, 896 F.2d at 1390 ("The party moving for change of venue bears the burden of proof and that burden must be carried by a preponderance of the evidence."). The Defendants, as the movant in this case, have failed to carry

32

their burden with respect to establishing that transfer of this action to the District of Delaware is convenient to the parties.

**Conclusion**

Based on the facts and conclusions set forth above, the Defendants' motion to transfer the present action to the District of Delaware pursuant to 28 U.S.C. § 1412 is denied.

It is so ordered.

**New York, NY**
**March /  , 2012**

ROBERT W. SWEET
U.S.D.J.

33